**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**Civil Case No. 1:22-cv-00095**

| | |
|---|---|
| JORDAN-ASHLEY, LLC; GREAT TRAIN ROBBERY SOLAR PLANT, LLC; STORAGE DEPOT NC, LLC; THE GREAT TRAIN ROBBERY, LLC; and MOUNTAIN REALTY, LLC, <br><br> Plaintiffs, <br><br> V. <br><br> PUERTO NUEVO MEXICAN AND SEAFOOD RESTAURANT, INC.; PUERTO NUEVO COMMERCIAL REAL ESTATE LLC; NICOLAS LEON; JAIME LEON; JAVIER LEON OLIVARES; JOSE A. OLIVARES; and EDGAR GUZMAN, <br><br> Defendants. | |

## COMPLAINT

Plaintiffs Jordan-Ashley, LLC ("Jordan-Ashley"), The Great Train Robbery, LLC ("GTR"), Great Train Robbery Solar Plant, LLC ("GTR Solar"), Storage Depot NC, LLC ("Storage Depot"), and Mountain Realty, LLC ("Mountain Realty"; collectively, "Plaintiffs") file this complaint against Defendants Puerto Nuevo Mexican and Seafood Restaurant, Inc. ("Puerto Nuevo"), Puerto Nuevo Commercial Real Estate LLC ("Puerto Nuevo Commercial Real Estate"), Nicolas Leon, Jaime Leon, Javier Leon Olivares, Jose A. Olivares, and Edgar Guzman, (collectively, "Defendants") and alleges as follows:

# INTRODUCTION

1.     On March 5, 2022, a fire caused significant damage to a building owned by Jordan-Ashley and located at 2120 Tynecastle Highway, Banner Elk, NC 28604 (the "Building"). The fire also damaged solar panels owned by GTR Solar as well as inventory and other property owned by GTR, Storage Depot, and Mountain Realty that was in the Building at the time of the fire.

2.     At the time, Puerto Nuevo was leasing part of the Building from Jordan-Ashley pursuant to a Commercial Lease Agreement dated November 1, 2017 (the "Lease"), and operating a restaurant in the Building. The Lease is attached as **Exhibit 1** to this Complaint.

3.     Broken light fixtures caused the fire, which damaged the rotunda and roof of the Building and caused smoke and water damage to the interior of the Building. Puerto Nuevo had an obligation to maintain and repair the broken light fixtures that caused the fire.

4.     Under the Lease, Puerto Nuevo agreed to maintain the leased part of the Building in a safe and orderly condition and to indemnify and hold Jordan-Ashley harmless for any damage to the Building during the term of the Lease.

5.     Puerto Nuevo breached its contractual and common law obligations by failing to maintain and repair the broken light fixtures that caused the fire and then refusing to indemnify Jordan-Ashley for the damage caused by Puerto Nuevo's contractual breaches and negligence.

6. Puerto Nuevo also agreed to maintain insurance coverage of at least $3 million for any damage to the part of the Building leased by Puerto Nuevo. After the fire, however, Jordan-Ashley learned that Puerto Nuevo had only purchased and maintained $1 million of insurance coverage.

7. Puerto Nuevo is operated and, upon information and belief, owned by Defendants Nicolas Leon, Jaime Leon, Javier Leon Olivares, Jose A. Olivares, and Edgar Guzman (the "Individual Defendants"). Nicolas and Jaime Leon played particularly important roles in the operation of Puerto Nuevo.

8. For example, Jaime Leon negotiated the Lease with Jordan-Ashley, and served as Jordan-Ashley's point of contact—along with Nicolas Leon—with Puerto Nuevo for any issues that arose with the Lease or the operation of the restaurant, including maintaining the premises.

9. Nicolas Leon was primarily responsible for the day-to-day operation of the restaurant, including maintaining the premises.

10. Jaime Leon and Nicolas Leon were thus personally negligent in failing to fix the broken light fixture and maintain the Building.

11. After the fire, Jordan-Ashley learned that the Individual Defendants were also operating a commercial real estate company—Puerto Nuevo Commercial Real Estate—from the restaurant and had listed the restaurant as the registered mailing address for another entity, Puerto Nuevo Taqueria, LLC.

12. The three entities are part of a larger and excessively fragmented web of, upon and information and belief, single-asset entities owned and operated by the

Individual Defendants in North Carolina, South Carolina, Virginia, Georgia, and Tennessee.

13.     Upon information and belief, Puerto Nuevo lacks sufficient funds to pay for the damage caused by the fire. Because Puerto Nuevo is an alter ego and mere instrumentality of the Individual Defendants and Puerto Nuevo Commercial Real Estate, Puerto Nuevo's corporate veil should be pierced to hold Defendants jointly and severally liable for all damages caused by the fire.

## PARTIES, VENUE, AND JURISDICTION

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

15.     Jordan-Ashley is a North Carolina limited liability company with its principal office at 2120 Tynecastle Highway, Banner Elk, North Carolina 28604.

16.     GTR is a North Carolina limited liability company with its principal office at 2120 Tynecastle Hwy, Banner Elk, North Carolina 28604. GTR owns and operates a retail store in the Building. The fire damaged personal property and inventory that GTR stored in the Building. GTR is also a third-party beneficiary of the Lease.

17.     GTR Solar is a North Carolina limited liability company with its principal office at 2120 Tynecastle Highway, Banner Elk, North Carolina 28604. GTR

owned solar panels that were installed on the roof of the Building. GTR Solar's only member is Jordan-Ashley.

18.     Storage Depot is a North Carolina limited liability company with its principal office at 2120 Tynecastle Highway, Banner Elk, North Carolina 28604. Storage Depot owned and stored inventory in a store in the Building at the time of the fire and the inventory was damaged by the fire.

19.     Mountain Realty is a North Carolina limited liability company with its principal office at 2120 Tynecastle Highway, Banner Elk, North Carolina 28604. Mountain Realty owns and operates a real estate company out of the Building and had personal property damaged by the fire.

20.     For purposes of diversity jurisdiction, Plaintiffs are citizens of Florida.

21.     The only member of GTR Solar is Jordan-Ashley. The members of the other Plaintiffs are Turchin Enterprises, LP, and John A. Turchin.

22.     Mr. Turchin is a citizen of Florida for purposes of diversity jurisdiction because his domicile is in Florida and he intends to remain in Florida. Mr. Turchin's primary residence is in Florida and he pays taxes in Florida.

23.     Turchin Enterprises, LP is a Delaware Limited Partnership and its general and limited partners are three traditional trusts. All three trusts are governed by Florida law and were created by trust agreements to facilitate a donative transfer.

24.     Mr. Turchin is the trustee for all three trusts.

Capua Law Firm, PA
5

25.     Puerto Nuevo is a North Carolina corporation with its principal place of business at 2120 Tynecastle Hwy, Banner Elk, North Carolina 28604. Nicolas Leon is the registered agent and Vice President, Jaime Leon is the President, and Javier Leon Olivares, Jose A. Olivares, and Edgar Guzman are Executive Officers.

26.     Since forming in 2009, Puerto Nuevo was administratively dissolved three times in 2015, 2017, and 2019, for failing to file the required annual report with the North Carolina Secretary of State.

27.     Nicolas Leon managed the day-to-day affairs of Puerto Nuevo, including overseeing the maintenance of the restaurant, and signed the Lease on behalf of Puerto Nuevo. Upon information and belief, Nicolas Leon owns part of Puerto Nuevo he is domiciled in North Carolina, and he is a citizen of North Carolina for purposes of diversity jurisdiction.

28.     Jaime Leon is the President of Puerto Nuevo and upon information and belief, owns part of Puerto Nuevo. Upon information and belief, Jaime Leon is a resident of South Carolina, he is a citizen of South Carolina for purposes of diversity jurisdiction, and he sometimes uses the name Jaime Leon Olivares.

29.     Jaime Leon worked with Nicolas Leon to run Puerto Nuevo, and he was heavily involved in negotiating the Lease with Jordan-Ashley. He also served as a point-of-contact for Jordan-Ashley with Puerto Nuevo when issues arose regarding the Lease or Puerto Nuevo's operation of the restaurant.

30.     Javier Leon Olivares is an Executive Officer of Puerto Nuevo and upon information and belief, owns part of Puerto Nuevo. Upon information and belief,

Javier Leon Olivares is a resident of Virginia, his domicile is in Virginia, and he is a citizen of Virginia for purposes of diversity jurisdiction.

31.     Jose A. Olivares is an Executive Officer of Puerto Nuevo and upon information and belief, owns part of Puerto Nuevo. Upon information and belief, Jose A. Olivares is a resident of South Carolina, his domicile is in South Carolina, and he is citizen of South Carolina for purposes of diversity jurisdiction.

32.     Edgar Guzman is an Executive Officer of Puerto Nuevo and upon information and belief, owns part of Puerto Nuevo. Upon information and belief, Edgar Guzman is a resident of South Carolina, his domicile is in South Carolina, and he is a citizen of South Carolina for purposes of diversity jurisdiction.

33.     Puerto Nuevo Commercial Real Estate is a North Carolina limited liability company with its principal office at 2120 Tynecastle Highway, Banner Elk, North Carolina 28604. Nicolas Leon, Jaime Leon Olivares,[1] and Javier Leon Olivares are members and executive officers of Puerto Nuevo Commercial Real Estate. Jeff Krueger is the registered agent for Puerto Nuevo Commercial Real Estate. Mr. Krueger is also the registered agent for at least three similarly named and affiliated entities in North Carolina and Tennessee.

34.     Venue is appropriate in this District because a substantial part of the events and omissions giving rise to the claims alleged below occurred in this District.

---

[1] Upon information and belief, Jaime Leon Olivares is Defendant Jaime Leon.

35.     This Court has personal jurisdiction over Defendants because they live in North Carolina or purposely availed themselves of the laws of North Carolina by operating numerous businesses in North Carolina.

## FACTUAL ALLEGATIONS

36.     In the fall of 2017, Jaime Leon and Nicolas Leon began discussing and negotiating the Lease with John Turchin, a member and representative of Jordan-Ashley.

37.     Jordan-Ashley and Puerto Nuevo entered into the Lease as of November 1, 2017, for a term of ten years.

38.     Under the Lease, Puerto Nuevo rented and occupied approximately 7,705 square feet in the Building, which is labeled in the Lease as the "Premises" or the "Demised Premises." Puerto Nuevo agreed to pay Jordan-Ashley $7,500 a month or ninety thousand dollars per year in rent for the Premises. Lease ¶ 3.

39.     Puerto Nuevo leased the Demised Premises "for the sole purpose of operating a restaurant/bar, including any related business and administrative activities relat[ed] to such uses." Lease ¶ 8. Puerto Nuevo also agreed that it would not "permit the use or occupancy of the Demised Premises or any part thereof by any person or entity other than [Puerto Nuevo]." Lease ¶ 10.

40.     Puerto Nuevo agreed to maintain "exclusive control and management" over the Premises and to keep the Premises in a "safe, clean, orderly, and serviceable condition and otherwise in good repair." Lease ¶ 4.

41. The Lease is clear that Puerto Nuevo's obligations included maintaining "non-structural portions of the Premises including . . . electrical . . . facilities and appliances." Lease ¶ 12.4.

42. Puerto Nuevo also agreed to pay all operating costs for the Premises including "the total cost and expense incurred in operating, maintaining, repairing and replacing, as necessary" the Premises as well as "all costs and expenses necessary to operate, maintain, and repair" the Premises. Lease ¶ 5.1.1.

43. In contrast, the Lease states that "Landlord shall have no responsibility whatsoever with respect to the operation, maintenance or repair of the Demised Premises," Lease ¶ 5.1.1, and "[n]either Landlord nor Landlord's agents or servants shall be liable for any damages caused by fire, rain, wind or any act of God," Lease ¶ 12.3.

44. After signing the Lease, Puerto Nuevo breached several obligations under the Lease by failing to pay its portion of shared expenses such as utilities, property taxes, and property insurance, and falling behind on utility bills for the restaurant. Jordan-Ashley often had to follow up with Nicolas and Jaime Leon to remind them to pay their bills.

45. More concerning, Puerto Nuevo showed a general lack of concern about maintaining and operating the restaurant in a safe, clean, and orderly manner.

46. On February 5, 2021, Jordan-Ashley received a report from an insurance company noting maintenance and cleaning issues specific to the restaurant, including not cleaning the kitchen hood on a semi-annual basis, leaving accumulated grease on

the ceiling and wall around the cooking appliances, not installing a drip tray below the grease filter, and allowing the hood to extend past the cook tops, which caused grease buildup on the ceiling and lower area.

47.    Jordan-Ashley forwarded the list to Nicolas Leon, emphasizing that items related to the restaurant "are all your responsibility and the insurance company needs confirmation that they have been done."

48.    On March 19, 2021, Jordan-Ashley forwarded Nicolas Leon and Jaime Leon several bills "for expenses [Jordan-Ashley] had to pay on your behalf to avoid penalties and fines."

49.    On May 7, 2021, Jordan-Ashley forwarded Nicolas Leon unpaid electric bills and explained that "Mountain electric told me they will be turning off the power if the attached bill is not paid immediately." Jordan-Ashley asked Puerto Nuevo to "[p]lease contact them to make arrangement for this bill to be paid so they can keep the power on." Jordan-Ashley would have to follow up about a similar issue with paying utility bills in August 2021.

50.    In June 2021, Jordan-Ashley had to contact Nicolas Leon again about the kitchen hood and ask for a written statement from the cleaning company saying everything is in working order. Jordan-Ashley explained that the "insurance company needs it ASAP" and "[t]hey are about to cancel our insurance policy and we need this document to keep the policy ion [sic] force."

51.    On January 28, 2022, Jordan-Ashley forwarded Puerto Nuevo a report from the insurance inspector, and noted in particular that Puerto Nuevo needed to

fix (1) "Hood & Air Duct Cleaning"; and (2) "Heavy Grease Accumulation on Kitchen Surfaces."

52.     The insurance company reported that "[t]he existing accumulation could support a fire long enough to cause serious damage" and "[t]he grease accumulation on the kitchen walls and equipment should be cleaned to reduce the potential for a fire." Although Jordan-Ashley has not yet determined whether these factors contributed to or exacerbated the damage caused by the fire, they were material violations of Puerto Nuevo's responsibilities in Paragraph 12.2 of the Lease.

53.     On March 5, 2022, a fire erupted at the Building and caused significant damage to the Building.

54.     A preliminary investigation later confirmed that the fire originated in the upper part of the rotunda and was caused by a flood light fixture mounted to the roof that illuminated the rotunda. The preliminary investigation indicated that the light fixture fell over on a rubber membrane with Styrofoam sheeting beneath the membrane. Over time, the trapped heat degraded the rubber membrane and eventually ignited the fire.

55.     Defendants were responsible for maintaining the broken exterior flood light.

56.     The fire caused significant damage to the Building including charring and material degradation to the wood-framed combination parapet and mansard roof, the west-covered entity roof, and the spalling of the brick veneer.

57. The interior of the building was also damaged by water used to fight the fire and rain that entered the Building through the damaged roof, as well as smoke from the fire.

58. The fire also damaged the HVAC units in the Building, which required Jordan-Ashley to pay for temporary repairs to the HVAC in the short term to continue cooling and ventilating the Building until the Building could be repaired, and to permanently replace the damaged HVAC units that were damaged by the fire.

59. The fire also damaged (i) inventory and personal property owned by GTR that was located in the retail store owned by GTR in the Building; (ii) solar panels owned by GTR Solar and installed on the roof of the Building; (iii) property owned by Mountain Realty and located in Mountain Realty's office in the Building; and (iv) inventory owned by Storage Depot and located in the store owned by Storage Depot in the Building.

60. Jordan-Ashley does not yet know the full extent of the structural damage to the Building and continues to investigate the damages, including potential structural damage to the Building. Defendants are liable for all damages caused by the fire including, but not limited to, the damages described in this Complaint.

61. Defendants have refused to pay for the damage to the Building, or the inventory and other property owned by Plaintiffs that was damaged by the fire. Instead, Nicolas Leon claimed Puerto Nuevo's insurance will cover the damage, even though the $1 million policy maintained by Puerto Nuevo will not cover the cost to repair the damage to the Building.

Capua Law Firm, PA

## ALTER EGO, JOINT ENTERPRISE, AND JOINT VENTURE

62.     The Individual Defendant were engaged in a joint enterprise and joint venture to operate Puerto Nuevo because they had an alliance to achieve the purpose of running a restaurant, and each of the Individual Defendants had a legal right—as owners, officers, and directors—to control the operation of Puerto Nuevo. Upon information and belief, the Individual Owners share in Puerto Nuevo's profits.

63.     The Individual Defendants are also part of a multi-state joint enterprise and venture of affiliated restaurants and excessively fragmented entities in at least five states (North Carolina, South Carolina, Virginia, Georgia, and Tennessee).

64.     In North Carolina, the Individual Defendants operate and/or are members of Puerto Nuevo, Puerto Nuevo Commercial Real Estate, and Puerto Nuevo Taqueria, LLC.

65.     Non-party Puerto Nuevo Taqueria, LLC is a North Carolina limited liability company with a registered office and registered mailing listed at 2120 Tynecastle Hwy, Banner Elk NC 28604. Nicolas Leon is the registered agent and a member of the LLC. Edgar Guzman, Jaime Leon, and Javier Leon are also members of Puerto Nuevo Taqueria, LLC.

66.     Javier Leon is also the President of Puerto Nuevo Restaurant Spruce Pine Inc., a North Carolina corporation with its principal office in Spruce Pine, North Carolina. Its registered agent is Jeff Krueger who also serves as Puerto Nuevo Commercial Real Estate's registered agent.

67.     The Individual Defendants were also involved in at least two North Carolina entities that were dissolved or suspended. Non-party Puerto Nuevo Restaurant Boone, Inc. is an administratively dissolved North Carolina corporation that lists 2120 Tynecastle Hwy, Banner El,, NC 28604 as its registered office and mailing address. Jaime Leon was the President and Nicolas Leon was the Secretary, Treasurer, and registered agent. This entity was administratively dissolved on May 26, 2021, for failing to file an annual report with the North Carolina Secretary of State.

68.     Non-party Puerto Nuevo Restaurant Newland, Inc. is a suspended North Carolina corporation, and Nicolas Leon is its registered agent. Jaime Ramirez is listed as the incorporator of this entity, which was suspended in July 2018 for failing to comply with North Carolina General Statute § 105-230(b) (failure to file any report or return or pay any tax). As explained below, Jaime Ramirez was also the incorporator for Puerto Nuevo and he is associated with several other entities affiliated with the Individual Defendants.

69.     The Individual Defendants and upon information and belief, their family members, own and operate several similar entities in different states.

- Non-parties Puerto Nuevo Mexican and Seafood Restaurant, Inc., Taco Rienda, LLC, and Old Mill Wholesale Flowers, LLC are South Carolina entities with their principal place of business at 140 Kare Free Blvd.,

Capua Law Firm, PA

14

West Union, SC 29696,[2] and Jaime Leon is the registered agent for Taco Riendo and Old Mill Wholesale Flowers.

- Non-party Puerto Nuevo Restaurant, LLC is a Virginia Limited Liability Company located at 109 E. Main St., Marion VA 24354. Its registered agent is Jose Javier Leon, Jr. Jaime Leon is listed on this entity's filing with Virginia Secretary of State as the organizer.

- Non-party Puerto Nuevo Mexican and Seafood Restaurant, LLC is a Tennessee limited liability company located at 8162 Highway 19 E, Roan Mountain, TN 37687, and Nicolas Leon is the registered agent.

- Non-party Puerto Nuevo Mexican and Seafood, Inc. is a Tennessee corporation and Nicolas Leon is listed as the point of contact for the Tennessee Secretary of State.

- Non-party Puerto Nuevo Restaurant, LLC is a Georgia Limited Liability Company located at 353 N. Broad Street, Toccoa, GA 30577. Its registered agent is 3 Point Services, Inc.—a Georgia corporation—and the CFO and CEO of 3 Point Service, Inc. is Jaime Ramirez. Mr. Ramirez is listed as the incorporator of Puerto Nuevo in its Articles of Incorporation and the incorporator of suspended North Carolina corporation Puerto Nuevo Restaurant Newland, Inc.

---

[2] In filings with the North Carolina Secretary of State for Puerto Nuevo, Jaime Leon listed 140 Kare Free Blvd., West Union, SC 29696 as his address. The same address is listed as the registered mailing address for JL, LLC, a South Carolina limited liability company for which Jaime Leon is the registered agent.

70.     Furthermore, upon information and belief, Puerto Nuevo and the affiliated entities use Jeff Contador as a controller or CPA for the entities and he plays an important role in the joint enterprise. For example, when Mr. Turchin arrived at the Building on the day of the fire, Mr. Contador was already on the scene.

71.     Mr. Contador and Mr. Krueger—the registered agent for Puerto Nuevo Commercial Real Estate and several affiliated entities—are tax preparers with Papeleo, Inc. in Boone, North Carolina. According to its website, Papeleo, Inc. specializes in developing services facilitating family, employment, and investment-based immigration.

72.     Puerto Nuevo and Puerto Nuevo Commercial Real Estate are alter egos of each other and alter egos and mere instrumentalities of the Individual Defendants.

73.     The Individual Defendants control the conduct of Puerto Nuevo and Puerto Nuevo Commercial Real Estate such that they have no separate mind, will, or existence of their own, and the Individual Defendants exercise complete domination of the finances, policy making, and business practices of Puerto Nuevo.

74.     The control of Puerto Nuevo by the Individual Defendants includes, but is not limited to, the conduct of Puerto Nuevo related to operating the restaurant, signing and failing to perform under the Lease, and failing to exercise reasonable and ordinary care to avoid damage to the Building. In particular, the following allegations—based primarily on public information and without the benefit of discovery—show Puerto Nuevo is an alter ego of the Individual Defendants and

Puerto Nuevo Commercial Real Estate, and equity favors piercing Puerto Nuevo's corporate veil:

- Puerto Nuevo failed to observe corporate formalities because it was administratively dissolved three times for failing to file its annual report;

- At least two other affiliated North Carolina entities have been dissolved or suspended due to failure to file necessary documents with the North Carolina Secretary of State;

- The Individual Defendants ignored corporate formalities and commingled entities by listing the Building as the principal office for Puerto Nuevo Commercial Real Estate, a commercial real estate company, even though Puerto Nuevo was operating a restaurant at the same address and represented in the Lease that Puerto Nuevo was only operating a restaurant in the Building;

- The Individual Defendants used the restaurant as a registered mailing address for Puerto Nuevo Taqueria, LLC;

- The Individual Defendants and their family members excessively fragmented their joint enterprise into many, single asset entities for affiliated restaurants in North Carolina, South Carolina, Virginia, Tennessee, and Georgia;

- Puerto Nuevo and Puerto Nuevo Commercial Real Estate have many of the same officers, directors, and owners who, upon information and belief, perform similar tasks for different entities; and

- Jaime Leon listed the address for several South Carolina entities—140 Kare Free Blvd., West Union, SC 29696—as his business address on filings with the North Carolina Secretary of State for Puerto Nuevo.

75. Upon information and belief, Plaintiffs will uncover additional evidence during discovery that Puerto Nuevo is a mere instrumentality and alter ego of the Individual Defendants and other affiliated entities. Plaintiffs thus reserve the right to seek leave to amend this complaint to add additional parties based on information learned during discovery in this matter.

76. The Individual Defendants used their control over Puerto Nuevo to breach the Lease and negligently cause damage to the Building in violation of Jordan-Plaintiffs' legal rights.

77. The Individual Defendants' control over Puerto Nuevo proximately caused damage to Plaintiffs.

78. Upon information and belief, Puerto Nuevo lacks sufficient funds to pay the significant damages to Plaintiffs and piercing the corporate veil will prevent fraud and achieve equity.

79. The Individual Defendants are also engaged in a joint enterprise and venture to operate multiple restaurants under similar names with overlapping officers, directors, and agents. The Individual Defendants exerted legal and actual

control over Puerto Nuevo and were engaged in the common purpose of operating Puerto Nuevo and similar restaurants.

80.     Puerto Nuevo, Puerto Nuevo Commercial Real Estate, and the Individual Defendants are thus jointly and severally liable for the breach of the Lease by Puerto Nuevo and the negligence of Puerto Nuevo under an alter ego and veil piercing theory. Puerto Nuevo and the Individual Defendants are also liable for the negligence of Puerto Nuevo and the other Individual Defendants as members of a joint enterprise and venture.

81.     Defendants are also personally and independently liable for their own negligent conduct as alleged below, including but not limited to, the individual tortious acts of the Individual Defendants acting in their capacities as corporate officers and/or representatives of Puerto Nuevo.

## COUNT I
### Breach of Contract
### (Jordan-Ashley Against All Defendants)

82.     The allegations in the foregoing paragraphs of this Complaint are realleged and incorporated by reference herein as if fully set out.

83.     The Lease is a valid and enforceable contract.

84.     At all times, Jordan-Ashley performed all of its obligations under the Lease and every condition precedent to Puerto Nuevo's performance had been satisfied when Puerto Nuevo breached the Lease.

85.     Puerto Nuevo breached material terms of the Lease in at least four ways.

Capua Law Firm, PA
19

86.   First, Puerto Nuevo failed to maintain the Building as required by numerous provisions of the Lease:

- Paragraph 4 required Puerto Nuevo to "keep all of the [Premises] in a safe, clean, orderly, and serviceable condition and otherwise in good repair and available for the purposes for which they are intended, namely the access of invitees to the Building, including the obligation of replacement of any said [Premises] in case same are not capable of being repaired, during the Lease Term."

- Paragraph 5.1.1 required Puerto Nuevo to pay all of the "Demised Premises Operating Costs," which included "the total cost and expense incurred in operating, maintaining, repairing and replacing, as necessary the Demised Premises," and clarified that Jordan-Ashely "shall have no responsibility whatsoever with respect to the operation, maintenance or repair of the Demise[d] Premises."

- Paragraph 12.4 required Puerto Nuevo to "repair and maintain in good order and condition the non-structural portions of the Premises, including . . . electrical . . . and appliances" and, "[i]n the event the Landlord shall undertake any maintenance or repair in the course of which it shall be determined that such maintenance or repair work was necessary by the negligence or willful act of Tenant or any of its employees or agents or that the maintenance or repair is, under the

terms of this Lease, the responsibility of Tenant, Tenant shall pay Landlord's costs therefore plus overhead as provided above."

87. Puerto Nuevo breached these material provisions by failing to maintain and fix the broken light fixtures that caused the fire and otherwise maintain the Premises in a safe and orderly manner. Puerto Nuevo's breach of these obligations caused the fire and significant damage to the Building.

88. Second, Puerto Nuevo refuses to indemnify and hold Jordan-Ashley harmless for the damage to the Building as required by the Lease.

89. In particular, Paragraph 15.3 states that Puerto Nuevo must "indemnify, defend and hold harmless Landlord and its agents from and against all . . . damages, losses, costs and expenses, including reasonable attorney's fees and costs . . . incurred or suffered by Landlord and arising from or in any way connected with the Premises or the use thereof or any acts, omissions, neglect or fault of Tenant or any of Tenant's agents including but not limited to, any breach of this Lease, or any . . . property damage occurring in or about the Premises, the Building or the Land."

90. As alleged above, the fire damage to the Building was caused by the negligent failure of Puerto Nuevo to maintain the Premises as required by the Lease.

91. Third, Puerto Nuevo breached the provision of the Lease that required Puerto Nuevo to "provide and maintain in force during the entire term of this Lease . . . insurance with limits of coverage . . . not less than Three Million ($3,000,000.00) Dollars on account of damage to property." Lease § 15.2.

Capua Law Firm, PA

21

92.     Puerto Nuevo only purchased and maintained insurance covering $1,000,000 in damage to premises rented to Puerto Nuevo.

93.     Fourth, Puerto Nuevo failed to pay its share of Common Area Maintenance fees for utilities, trash haulage, property taxes, and property insurance as required by Paragraph 6 of the Lease. Puerto Nuevo currently owes Jordan-Ashley at least $18,000 in unpaid invoices for expenses Puerto Nuevo agreed to share with Jordan-Ashley during the term of the Lease.

94.     The multiple and material breaches of the Lease have proximately caused damage to Jordan-Ashley by (1) damaging the Building; (2) depriving Jordan-Ashley of insurance proceeds Puerto Nuevo promised to provide; (3) depriving Jordan-Ashley of rents that would otherwise be owed to Jordan-Ashley if it could have rented the Premises during the time required to fix the fire damage; (4) requiring Jordan-Ashley to incur significant expenses to attempt to mitigate the damage to the Building by, for example, paying to dry out the Building after rain entered the Building through the damaged roof; and (5) requiring Jordan-Ashley to incur significant costs and expenses, including reasonable attorney's fees, to enforce the terms of the Lease.

95.     As alleged above, Puerto Nuevo is an alter ego and mere instrumentality of the Individual Defendants, and Puerto Nuevo Commercial Real Estate. Thus, Puerto Nuevo's corporate veil should be pierced and the Individual Defendants and Puerto Nuevo Commercial Real Estate held jointly and severally liable for the material breaches of the Lease by Puerto Nuevo.

Capua Law Firm, PA
22

96.     The allegations in the foregoing paragraphs of this Complaint are realleged and incorporated by reference herein as if fully set out.

97.     Defendants owed Jordan-Ashley a duty to use reasonable diligence and ordinary care to treat the Premises in such a manner that no injury would be done to the Building and to otherwise use ordinary care to protect the Building from damage, including damage from fire.

98.     Puerto Nuevo owed a duty to Jordan-Ashley as a tenant to use reasonable diligence to treat the premises in such manner that no injury would be done to the Building and the Building would revert back to Jordan-Ashley at the end of the tenancy undamaged by the negligent acts or omissions of Puerto Nuevo.

99.     The Individual Defendants owed a duty of care to Jordan-Ashley because they operated a restaurant and a commercial real estate company in the Building. The Individual Defendants are liable for their own negligent conduct.

100.    Puerto Nuevo Commercial Real Estate operated out of the Building and thus owed a similar duty of care to Jordan-Ashley.

101.    Defendants breached their duty of care by failing to use reasonable diligence and failing to exercise the degree of care that a reasonable and prudent person would use under the same or similar circumstances to protect the Building from destruction by fire. Among other things, Defendants breached their duty of care

by failing to replace broken light fixtures that any reasonable person would foresee could cause a fire and significant damage to the Building and Jordan-Ashley.

102.   Defendants' negligence proximately caused foreseeable damage to Jordan-Ashley because the broken light fixtures caused the fire and significant damage to the Building. It was also foreseeable that Defendants' negligence would cause damage to the Building, deprive Jordan-Ashley of significant rental income while the Building is repaired, and require Jordan-Ashley to incur significant expenses for other damage to the Building due to the damaged roof.

103.   In addition to being individually and personally liable for their own negligence, the Individual Defendants are also jointly and severally liable as members and participants in a joint enterprise and joint venture, and the negligence of any one Individual Defendant is legally imputed to the other Defendants.

104.   Finally, the Individual Defendants and Puerto Nuevo Commercial Real Estate are liable for the acts and damages caused by the negligence of their alter ego, Puerto Nuevo.

## COUNT III
### Negligence
### (GTR, GTR Solar, Storage Depot, and Mountain Realty Against All Defendants)

105.   The allegations in the foregoing paragraphs of this Complaint are realleged and incorporated by reference herein as if fully set out.

106.   As a tenant and occupant of the Building and the operator of a restaurant in the Building, Puerto Nuevo owed a duty of care to GTR, GTR Solar,

Storage Depot, and Mountain Realty ("Other Occupant Plaintiffs") to use reasonable diligence to treat the Building in such a manner that no injury would be done to the Building or property located in the Building and owned by the Other Occupant Plaintiffs.

107.    The Individual Defendants owed a duty of care to the Other Occupant Plaintiffs because the Individual Defendants operated a restaurant and commercial real estate company in the Building. The Individual Defendants are liable for their own negligent conduct as officers, directors, employees, and owners of Puerto Nuevo.

108.    Puerto Nuevo Commercial Real Estate operated out of the Building and thus owed a similar duty of care to the Other Occupant Plaintiffs.

109.    Defendants breached their duties of care by failing to use reasonable diligence and failing to exercise the degree of care that a reasonable and prudent person would use under the same or similar circumstances to protect the property of the Other Occupant Plaintiffs from destruction by fire. Among other things, Defendants breached their duty of care by failing to replace broken light fixtures that any reasonable person would foresee could cause a fire and significant damage to the property owned by the Other Occupant Plaintiffs and located in the Building.

110.    Defendants' negligence proximately caused foreseeable damage to the Other Occupant Plaintiffs because the broken light fixtures caused the fire and significant damage to property owned by the Other Occupant Plaintiffs and located in the Building.

Capua Law Firm, PA

111.    In addition to being individually and personally liable for their own negligence, the Individual Defendants are also jointly and severally liable as members and participants in a joint enterprise and joint venture, and the negligence of any one Individual Defendant is legally imputed to the other Defendants.

112.    Finally, the Individual Defendants and Puerto Nuevo Commercial Real Estate are liable for the acts and damages caused by the negligence of their alter ego, Puerto Nuevo.

## COUNT IV
## Breach of Contract
## (GTR Against All Defendants)

113.    The allegations in the foregoing paragraphs of this Complaint are realleged and incorporated by reference herein as if fully set out.

114.    The Lease is a valid and enforceable agreement between Jordan-Ashley and Puerto Nuevo.

115.    GTR is a third party beneficiary of the Lease because GTR received a direct benefit from the Lease. The Lease required Puerto Nuevo to obtain insurance policies that included "Landlord and such other parties as Landlord may reasonably designate as additional insured." Lease § 15.2(i).

116.    On the insurance policy obtained by Puerto Nuevo from Erie Insurance Exchange, GTR and Jordan-Ashley are listed as "Additional Insured – Managers or Lessors of Premises."

117.    Puerto Nuevo and Jordan-Ashley thus agreed that the Lease—in particular, the provision requiring Puerto Nuevo to "provide and maintain in force

during the entire term of this Lease . . . insurance with limits of coverage . . . not less than Three Million ($3,000,000.00) Dollars on account of damage to property," Lease § 15.2—was entered into for the direct benefit of GTR.

118.  Puerto Nuevo breached its obligations to GTR under the Lease by maintaining only $1 million in insurance coverage for damage to property, instead of the $3 million Puerto Nuevo agreed to provide and maintain.

119.  Puerto Nuevo's material breach of the Lease proximately caused harm to GTR because inventory and personal property owned by GTR was damaged during the fire and will not be covered by Puerto Nuevo's inadequate insurance policy.

120.  As alleged above, Puerto Nuevo is an alter ego and mere instrumentality of the Individual Defendants, and Puerto Nuevo Commercial Real Estate. Thus, Puerto Nuevo's corporate veil should be pierced and the Individual Defendants and Puerto Nuevo Commercial Real Estate held jointly and severally liable for the material breaches of the Lease by Puerto Nuevo.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray as follows:

1.  The Court enter judgment in favor of Plaintiffs and against Defendants, jointly and severally liable, for damages in an amount to be proven at trial but in excess of $75,000;

2.  The Court award Plaintiffs all costs and reasonable attorney's fees as allowed by law and in the Lease;

Capua Law Firm, PA

3.      A trial by jury be had on all triable issues; and

4.      The award of all other and further relief the Court deems just and

proper.

This the 17th day of May, 2022.

/s/ Paul A. Capua
Paul A. Capua / N.C. State Bar No. 40239
Jonathon D. Townsend / N. C. State Bar No. 51751
CAPUA LAW FIRM, PA
*Attorneys for Plaintiffs*
58 ½ N. Lexington Ave
Asheville, North Carolina 28801
Telephone: (828) 264-0260
Fax: (828) 378-0236
E-mail: paul@capualaw.com
Email: townsend@capualaw.com

Capua Law Firm, PA
28