IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22 CV 95 MR WCM

| | |
|---|---|
| JORDAN-ASHLEY, LLC; GREAT TRAIN ROBBERY SOLAR PLANT, LLC; STORAGE DEPOT NC, LLC; THE GREAT TRAIN ROBBERY, LLC; and MOUNTAIN REALTY, LLC, <br><br>　　　　Plaintiffs, <br><br>v. <br><br>PUERTO NUEVO MEXICAN AND SEAFOOD RESTAURANT, INC.; PUERTO NUEVO COMMERCIAL REAL ESTATE LLC; NICOLAS LEON; JAIME LEON; JAVIER LEON OLIVARES; JOSE A. OLIVARES; and EDGAR GUZMAN, <br><br>　　　　Defendants. | MEMORANDUM AND RECOMMENDATION |

This matter is before the Court on a Motion to Dismiss (Doc. 12) filed by Puerto Nuevo Mexican and Seafood Restaurant, Inc. (the "Restaurant"), Nicholas Leon, and Jaime Leon (collectively, the "Moving Defendants"), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

1

## I. Relevant Procedural Background

On May 17, 2022, Jordan–Ashley, LLC ("Jordan–Ashley"), the Great Train Robbery, LLC ("GTR"), Storage Depot NC, LLC ("Storage Depot"), Mountain Realty, LLC ("Mountain Realty"), and Great Train Robbery Solar Plant ("GTR Solar") (collectively, "Plaintiffs") filed their Complaint. Doc. 1.

On June 17, 2022, Defendants Edgar Guzman ("Guzman"), Javier Leon Olivares ("Javier Olivares"), Jose A. Olivares ("Jose Olivares"), and Puerto Nuevo Commercial Real Estate, LLC ("Puerto Nuevo Real Estate") filed an answer. Doc. 8.

On July 14, 2022, the Moving Defendants filed the Motion to Dismiss. Doc. 12.

Plaintiffs responded in opposition on August 4, 2022. Doc. 15.

The Moving Defendants have not filed a reply, and the time for doing so has expired.

## II. Plaintiffs' Allegations

On November 1, 2017, Jordan–Ashley and the Restaurant entered a 10–year Commercial Lease Agreement ("Lease") whereby the Restaurant rented and occupied approximately 7705 ft (the "Premises") in a building located at 2120 Tynecastle Highway in Banner Elk, North Carolina (the "Building"). Id.

2

at ¶¶ 1, 37, 38.[1] The Restaurant leased the Premises for the purpose of operating a "restaurant/bar, including any related business and administrative activities…," and was required to maintain "non-structural portions of the Premises including…electrical…facilities and appliances." Id. at ¶¶ 39, 41 (quoting Lease). The Restaurant "also agreed to maintain insurance coverage of at least $3 million for any damage to the part of the Building leased by" the Restaurant. Id. at ¶ 6.

On March 5, 2022, a broken flood light fixture, which Defendants were responsible for maintaining, caused a fire at the Building. Id. at ¶¶ 53 – 55.

The fire did significant damage to the Building itself. In addition, the fire damaged inventory and personal property in a retail store owned by GTR that was located in the Building, solar panels owned by GTR Solar that were installed on the roof of the Building, property that was owned by Mountain Realty that was located in Mountain Realty's office in the Building, and inventory owned by Storage Depot that was located in a store owned by that entity that was also in the Building. Id. at ¶ 59.

---

[1] A copy of the Lease is attached as Exhibit 1 to Plaintiffs' Complaint. Doc. 1–1. The Lease may be considered in connection with the Motion to Dismiss. See e.g., Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (stating that courts may take judicial notice of matters of public record, documents attached to the complaint, and documents attached to the motion to dismiss so long as they are integral to the complaint and authentic).

Plaintiffs allege that Defendants have refused to pay for the damages caused by the fire and that Nicolas Leon, who is the Vice President of the Restaurant, has claimed that the Restaurant's insurance policy will cover the damage. However, the Restaurant maintained only $1 million in coverage (rather than at least $3 million as required by the Lease), and that policy will be insufficient to cover the cost to repair the damage to the Building. Id. at ¶¶ 6, 61.

Plaintiffs further allege that the Restaurant is an alter ego and mere instrumentality of the remaining Defendants, that the Restaurant's corporate veil should be pierced, and that all Defendants should be held jointly and severally liable for the damages caused by the fire. Id. at ¶ 13.

Plaintiffs' Complaint asserts claims by Jordan–Ashley for breach of contract and negligence against all Defendants, a claim for negligence by GTR, GTR Solar, Storage Depot, and Mountain Realty against all Defendants, and a claim by GTR against all Defendants for breach of contract under a third-party beneficiary theory.

### III. Legal Standards

#### A. Rule 12(b)(1)[2]

A motion to dismiss made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure addresses whether the court has subject matter jurisdiction to hear the dispute. See Fed. R. Civ. P. 12(b)(1). A dismissal for lack of subject matter jurisdiction should be without prejudice, since in such a context the court is unable to reach the merits of the case. See e.g., Beazer E., Inc. v. U.S. Navy, 111 F.3d 129, 134 (4th Cir. 1997) (unpublished). The party asserting federal subject matter jurisdiction has the burden of proving that such jurisdiction exists. Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999) (citing Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.1991)); Robb Evans & Assoc., LLC v. Holibaugh, 609 F.3d 359, 362 (4th Cir. 2010) ("The burden of establishing subject matter jurisdiction is on…the party asserting jurisdiction").

---

[2] Although the Moving Defendants cite Rule 12(b)(2) in their Motion to Dismiss, they discuss a potential lack of subject matter jurisdiction and do not argue that the Court lacks personal jurisdiction over any of the parties. See Doc. 12 at 2.

5

### B. *Forum Non Conveniens*

The Moving Defendants argue that the Complaint should be dismissed pursuant to Rule 12(b)(6) in light of a forum selection clause contained in the Lease. See Doc. 12 at 2-3.

In Atlantic Marine Construction Co. v. U.S. District Court, 571 U.S. 49, 60-61 (2013), the Supreme Court stated that a party may not enforce a forum selection clause by moving to dismiss for improper venue pursuant to Rule 12(b)(3); instead, "the appropriate way to enforce a forum-selection clause pointing to a state…forum is through the doctrine of *forum non conveniens*." A federal court that enforces such a clause may dismiss the action in federal court.[3] After Atlantic Marine, the Fourth Circuit has noted that it is not entirely clear whether a motion made pursuant to Rule 12(b)(6) could be used for this purpose. See BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 470 n. 5 (4th Cir. 2018) ("Although the Atlantic Marine court clarified that the 'appropriate way' to enforce such a forum selection clause is through *forum non conveniens*, it left open the

---

[3] When a forum selection clause identifies a different federal forum, the clause is evaluated pursuant to 28 U.S.C. § 1404, and the case may be transferred to that other federal court. Atlantic Marine, 571 U.S. at 60 ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer").

6

question of whether a defendant could obtain dismissal under Fed. R. Civ. P. 12(b)(6)").

In light of these authorities, the undersigned has analyzed the Motion under the doctrine of *forum non conveniens*. See Open Text Corp. v. Grimes, 262 F.Supp.3d 278, 284 (D.Md. 2017) ("As the doctrine of *forum non conveniens* by itself provides an appropriate enforcement mechanism for an FSC which opts for a foreign tribunal, there is no need to frame Defendants' Motion within the added structure of Rule 12(b)(6). Thus, this Court construes Defendants' Motion to Dismiss under the doctrine of *forum non conveniens* alone—not Rule 12(b)(6)") (internal quotations omitted).

## IV. Discussion

The Moving Defendants argue that Plaintiffs' Complaint should be dismissed because Plaintiffs have not sufficiently demonstrated that diversity jurisdiction exists and, alternatively, because Plaintiffs' claims are subject to a mandatory forum selection clause requiring that Plaintiffs' claims be adjudicated in state court.

### A. Subject Matter Jurisdiction

Plaintiffs assert that the parties are completely diverse such that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332. Doc. 1 at ¶ 14. Specifically, Plaintiffs allege that they are all citizens of Florida, and that

7

Defendants are citizens of North Carolina, South Carolina, or Virginia. Doc. 1 at ¶¶ 20, 25, 28, 30, 31, 32, 33.

The Moving Defendants do not take issue with Plaintiffs' allegations regarding *Defendants'* citizenship. Rather, they contend that Plaintiffs' allegations regarding *Plaintiffs'* own citizenship are insufficient to demonstrate complete diversity.[4]

"For purposes of diversity jurisdiction, the citizenship of a limited liability company ... is determined by the citizenship of all of its members." Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011). When a member is itself a limited liability company or partnership, the citizenship issues must be traced through until only individuals and/or corporations are reached. See Jennings v. HCR ManorCare, Inc., 901 F.Supp.2d 649, 651 (D. S.C. 2012) ("an LLC's members' citizenship must be traced through however many layers of members there may be"); Carden v. Arkoma Associates, 494 U.S. 185, 195 (1990).

Here, Plaintiffs allege that they are all North Carolina limited liability companies; that the sole member of GTR Solar is Jordan–Ashley; and that

---

[4] The Moving Defendants specify that they are making a facial challenge to the Court's subject matter jurisdiction. See Doc. 12-1 at 5; see also Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (holding that when a defendant raises a facial challenge to the court's subject matter jurisdiction, the court should assume the truth of the allegations in the complaint and deny a motion to dismiss "if the complaint alleges sufficient facts to invoke subject matter jurisdiction").

Turchin Enterprises, LP and John A. Turchin ("Turchin") are the members of Jordan–Ashley, GTR, Storage Depot, and Mountain Realty. Doc. 1 at ¶¶ 15, 16, 17 18, 19, 21, 22. Plaintiffs further allege that Turchin is a citizen of Florida, and that Turchin Enterprises, LP is a Delaware Limited Partnership which has "three traditional trusts" as its general and limited partners. The trusts are governed by Florida law and "were created by trust agreements to facilitate a donative transfer." Id. at ¶¶ 22, 23. Turchin is the trustee of all three trusts. Id. at ¶ 24.

The Moving Defendants contend that Plaintiffs cannot rely solely on the citizenship of Turchin in this context but must also allege the citizenship of any beneficiaries of the trusts. In support of this position, the Moving Defendants cite a 2010 case from this district involving business trusts and in which the court stated that "the citizenship of the trustees as well as the beneficiaries must be diverse in order for jurisdiction to lie in this Court." Doc. 12-1 at 4 (citing Mecklenburg County. v. Time Warner Entertainment-Advance/Newhouse Partnership, No. 3:05cv333-MR, 2010 WL 391279 at *3 (W.D.N.C. Jan. 10, 2010)).

In response, Plaintiffs argue, based on later case law, that the citizenship of "traditional trusts," such as the trusts at issue here, depends only on the citizenship of the trustee. See Doc. 10 at 9-12.

9

In 2016, the Supreme Court considered the citizenship of a real estate investment trust which, under applicable state law, was owned and controlled by its "members." Americold Realty Trust v. Conagra Foods, Inc., 577 U.S. 378 (2016). The Court analyzed the investment trust's citizenship using the "oft-repeated rule" that for unincorporated entities, the citizenship of the entity depends on the citizenship of all of its members. Id. at 381. The Court went on to note, however, that

> Traditionally, a trust was not considered a distinct legal entity, but a "fiduciary relationship" between multiple people. Such a relationship was not a thing that could be haled into court; legal proceedings involving a trust were brought by or against the trustees in their own name. And when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes. For a traditional trust, therefore, there is no need to determine its membership, as would be true if the trust, as an entity, were sued.
>
> Id. at 383 (internal citations omitted).

Later that same year, when discussing Americold, the Fourth Circuit stated:

> Putting aside the lack of a comprehensive definition of a "traditional trust," the "as would be true if the trust, as an entity were sued" phrase seems open to several interpretations.
>
> For example, does the phrase mean that there is no need to determine entity membership for diversity purposes when a "traditional trust" is sued as an entity? Or do we read the statement to mean that a trust sued as an entity must prove entity membership

10

> because it is a separate legal person from the individual trustees? We need not resolve those questions now, however, as the record here reflects diversity exists whether the trustees, the trust beneficiaries, or both are the subject of the citizenship requirement.
>
> Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found., 822 F.3d 739, 749-750 (4th Cir. 2016).

After Americold, other Circuits have held that the citizenship of a trust is dependent upon whether the trust is a traditional trust (in which case its citizenship is based on the citizenship of the trustee) or a business trust (in which case the citizenship of the trust's beneficiaries must also be taken into account). See GBForefront, L.P. v. Forefront Management Group, LLC, 888 F.3d 29, 40-41 (3d Cir. 2018); Raymond Loubier Irrevocable Trust v. Loubier, 858 F.3d 719, 722 (2d Cir. 2017) (distinguishing traditional trusts, which establish "only fiduciary relationships" and have "no legal identity distinct from their trustees" from "the variety of unincorporated artificial entities to which states have applied the 'trust' label, but which have little in common with traditional trusts" and concluding in a case involving only traditional trusts, that diversity was dependent upon the trustee's citizenship); Demarest v. HSBC Bank USA, N.A., 920 F.3d 1223 (9th Cir. 2019) (same); Yueh-Lan Wang v. New Mighty U.S. Tr., 843 F.3d 487 (D.C. Cir. 2016) (same).

11

Additionally, district courts within the Fourth Circuit have concluded that the citizenship of a traditional trust depends only upon the citizenship of the trustee. See Wurts v. Branch Banking and Trust Company, 402 F.Supp.3d 335, 338 (S.D.W.Va. 2019); Richards Building Services v. Hegarty, 5:21-CV-281-BO, 2022 WL 1143291, at *1 (E.D.N.C. Apr. 18, 2022) ("[T]he citizenship of a business trust is determined based on the citizenship of its members, while the citizenship of a traditional trust is based on the citizenship of its trustee.") (quoting Cartwright v. SSC Yanceyville Operating Co., LLC, 2018 WL 6680925, at *4 (M.D.N.C. Dec. 19, 2018)).

Here, Plaintiffs allege that the partners of Turchin Enterprises, LP are three "traditional trusts," which were "created by trust agreements to facilitate a donative transfer," and that Turchin (a citizen of Florida) is the sole trustee for each trust. Doc. 1 at ¶¶ 23, 24. The Moving Defendants have not challenged Plaintiffs' contention that these trusts are traditional trusts.

Considering the authorities referenced above, the undersigned is persuaded that Plaintiffs' allegations about their citizenship are sufficient for jurisdictional purposes.

### B. The Doctrine of *Forum Non-Conveniens*

Where the parties to a contract have agreed to a valid forum selection clause, that clause "should be given controlling weight in all but the most

12

Case 1:22-cv-00095-MR-WCM   Document 16   Filed 11/22/22   Page 12 of 19

exceptional cases." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (KENNEDY, J., concurring).

When courts consider valid forum selection clauses in the context of *forum non conveniens* motions, the typical factors are modified in that the plaintiff's choice of forum carries no weight, and the courts consider only "public interest factors" rather than arguments "about the parties' private interests."[5] Atlantic Marine, 571 U.S. at 63-64. Such public interest factors include "(1) Administrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided at home; and (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws or in application of foreign law; (5) and the unfairness of burdening citizens in an unrelated forum with jury duty." DiFederico v. Marriot Int'l., Inc., 714 F.3d 796, n.6 (4th Cir. 2013) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981)) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)); see also Brown v. Advanced Dig. Sols., LLC, 2017 WL 3838640, at *9 (W.D.N.C. Sept. 1, 2017) (same). "There is also a public interest in

---

[5] The private factors include "(1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

conserving judicial resources." True Homes, LLC v. Clayton Homes, Inc., No. 3:18-CV-00345-KDB-DCK, 2020 WL 4432849, at *3 (W.D.N.C. July 31, 2020) (citing Univ. of Tennessee v. Elliott, 478 U.S. 788, 798 (1986)).

Here, the Lease contains the following forum selection clause:

> Applicable Law and Venue: This lease is entered into in Avery County in the State of North Carolina and shall be governed by the applicable law of the said State. Tenant and Landlord hereby agree that if any dispute arises between said parties, Avery County shall be the proper, sole and exclusive venue for such dispute.

Doc. 1-1 at 10.

The Moving Defendants contend that Plaintiffs' Complaint should be dismissed in light of the forum selection clause and argue that this provision "is very broad and applies to 'any dispute'" between the Restaurant and Jordan–Ashley. Doc. 12-1 at 7.

In response, Plaintiffs assert that other defendants – specifically Guzman, Javier Olivares, Jose Olivares, and Puerto Nuevo Real Estate – have already answered Plaintiffs' Complaint, have therefore waived "any motion to dismiss or transfer" based on the forum selection clause, and will, regardless of the outcome of the Motion to Dismiss, be litigating in this Court. Doc. 15 at 14. Additionally, Plaintiffs point out that two of the Moving Defendants – Nicholas Leon and Jamie Leon – and four of the Plaintiffs – GTR, Storage Depot, Mountain Realty, and GTR Solar – are not signatories to the Lease, and

argue that the Moving Defendants have not established that the non-signatory Plaintiffs should be bound by the forum selection clause.

The Fourth Circuit has explained that certain "common law principles'…including estoppel and alter-ego theories, may bind a non-signatory to a contractual clause executed by a third party." Bartels, by and through Bartels v. Saber Healthcare Group, LLC, 880 F.3d 668, 679 (4th Cir. 2018) (quoting Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416–17 (4th Cir. 2000) and citing Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009) ("[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel"); Adams v. Raintree Vacation Exch., LLC, 702 F.3d 436, 441 (7th Cir. 2012) ("Piercing the veil remains a possible ground for enforcing a forum selection clause against a party's affiliate, if for example the corporation that signed the contract containing the clause was a mere shell ...."); see also Sagittarius Sporting Goods Company, Ltd. v. LG Sourcing, Inc., 162 F.Supp.3d 531, 538 (D.S.C. 2016) ("[T]o bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound") (internal quotations omitted).

15

Here, Plaintiffs' Complaint includes alter ego allegations, Doc. 1 at 13-19, and allegations that GTR is a third-party beneficiary of the Lease. Doc. 1 at 26.

At the same time, because the Moving Defendants are relying on the forum selection clause as an affirmative defense, they bear the burden of establishing that the clause should apply to all of the Plaintiffs and their claims. See Bartels, 880 F.3d at 681 (where plaintiff relied on a forum selection clause in arguing that remand to state court was required, plaintiff bore the burden of establishing that the forum selection clause applied to all defendants); see also Altvater Gessler–J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A., 572 F.3d 86, 89 (2d Cir. 2009) (party seeking enforcement of forum-selection clause bears burden of showing that "the claims and parties involved in the suit are subject to the forum selection clause"); Wing v. Clear Align, LLC, No. 20-cv-1143-SM, 2021 WL 3570703, at *2 (D.N.H. Aug. 11, 2021) ("as the party invoking the forum selection clause, Clear Align bears the burden of demonstrating that it is a part of an enforceable contract between the parties, that it is mandatory in nature, and that it applies to the claims advanced in Wing's complaint").

The Moving Defendants have not carried this burden. Although the Moving Defendants point out in their principal brief that Plaintiffs have alleged that GTR is a third-party beneficiary of the Lease, and argue that "[a]

16

plain and common sense reading of the Complaint reveals that the other Plaintiffs who operate businesses in the Building make the same claims even though they do not explicitly frame themselves as third party beneficiaries of the lease," see Doc. 12-1 at 7-8, they have not responded to Plaintiffs' argument that certain (non-moving) Defendants have waived enforcement of the forum selection clause and elected to litigate Plaintiffs' claims against them in this Court.[6] Further, while, as set out above, a non-signatory may in appropriate circumstances be bound by a forum selection clause, the Moving Defendants have not established that the non-signatory Plaintiffs in this specific case should be bound in that manner. See Anthony Allega Cement Contractor, Inc. v. Johnson Controls Federal System/Versar, LLC, No. 18-875-SRF, 2019 WL 1792201, at *11 (D.Del. April 24, 2019) (explaining that a non-signatory may be considered "closely related to a contract" based on particular factors, but that defendants had not addressed any of those factors in anything other than a conclusory fashion such that there was "no basis" to find they could invoke the forum selection clause, and that "[p]ractical considerations must guide the court's transfer analysis when a contractual forum selection provision is unavailable to all defendants in the case"); ABC Medical Holdings, Inc. v. Home Medical Supplies, Inc., No. 15-2457, 2015 WL 5818521, at *9 (E.D. Pa.

---

[6] As noted, the Moving Defendants have not filed a reply in support of the Motion to Dismiss.

Oct. 6, 2015) ("A situation where only some of the parties are bound to the forum selection clause 'implicat[es] concerns attending parallel lawsuits not present in *Atlantic Marine*'") (quoting In re Rolls Royce Corp., 775 F.3d 671, 679 (5th Cir. 2014)); see also True Homes, 2020 WL 4432849, at *3 (declining to transfer claims against specific defendant, "CPG," pursuant to a forum selection clause, where CPG was not the sole defendant, was related to other defendants, and was represented by the same counsel, and explaining that CPG's interest in pursuing a transfer appeared to be to "create additional litigation expense for [plaintiff], with the byproduct of requiring (and wasting) the time and effort of the judicial officers, staff and jurors" in the new forum, which was "plainly not in the public interest").

Accordingly, the undersigned will also recommend that the Motion to Dismiss based on the doctrine of *forum non conveniens* be denied.

## V. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss (Doc. 12) filed by Puerto Nuevo Mexican and Seafood Restaurant, Inc., Nicholas Leon, and Jaime Leon be **DENIED**.

Signed: November 21, 2022

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).